The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 17, 2018

## 2018COA75

**No. 17CA1534, *People In the Interest of I.B.-R.* — Juvenile Court — Dependency and Neglect — Termination of the Parent-Child Legal Relationship; American Indian Law — ICWA — Notice**

In this dependency and neglect case, a division of the court of appeals considers the duty and content of notice to the Bureau of Indian Affairs (BIA) under the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963 (2012). The division concludes that where a parent reports a connection to an unknown Native American tribe in a state with no designated tribal agents, the department of human services must notify the BIA of the parent's report, and the notice the department sends to the BIA must include the state that the parent identified. Because the notice to the BIA in this case omitted the state that the parent identified, the

division remands the case to the trial court for the limited purpose of ensuring compliance with ICWA.

COLORADO COURT OF APPEALS                                   **2018COA75**

Court of Appeals No. 17CA1534
Weld County District Court No. 16JV231
Honorable Elizabeth B. Strobel, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of I.B.-R., A.B.-R., M.B.-R., and A.R., children,

and Concerning J.S.R., C.M.H. f/k/a C.M.R., and S.B.-R.,

Respondents-Appellants

ORDER OF LIMITED REMAND

Division A
Loeb, C.J., Ashby and Welling, JJ.
PER CURIAM

Announced May 17, 2018

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County
Attorney, Greeley, Colorado, for Petitioner-Appellee

Keren C. Weitzel, Guardian Ad Litem

Van Gaasbeek Law, Christine Van Gaasbeek, Fort Collins, Colorado, for
Respondent-Appellant J.S.R.

Henson Law, LLC, Patrick R. Henson, Denver, Colorado, for Respondent-
Appellant C.M.H.

Pamela K. Streng, Georgetown, Colorado, for Respondent-Appellant S.B.-R.

¶ 1    In this dependency and neglect proceeding, C.M.H. (mother), formerly known as C.M.R., appeals the trial court's judgment terminating her parent-child relationships with her children, I.B.-R., A.B.-R., M.B.-R., and A.R.  J.S.R., who is the father of A.R., appeals the judgment terminating his parent-child relationship with A.R.  S.B.-R., who is the father of A.B.-R. and I.B.-R., appeals the judgment terminating his parent-child relationships with A.B.-R. and I.B.-R.

¶ 2    One of J.S.R.'s contentions is that the trial court and the Weld County Department of Human Services (the Department) did not comply with the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-63 (2012), after he asserted Native American heritage.

¶ 3    We agree that, although the Department notified some tribes and the Bureau of Indian Affairs (BIA), the notice was inadequate. Further, the trial court did not make the required inquiry of the participants as to all of the children after the Department initiated the proceeding to terminate parental rights.  Therefore, we remand the case to the trial court for the limited purpose of ensuring compliance with ICWA.

## I.    ICWA's Inquiry and Notice Provisions

¶ 4    ICWA's provisions are for the protection and preservation of Indian tribes and their resources and to protect Indian children who are members of or are eligible for membership in an Indian tribe. 25 U.S.C. § 1901(2), (3) (2012). ICWA recognizes that Indian tribes have a separate interest in Indian children that is equivalent to, but distinct from, parental interests. *B.H. v. People in Interest of X.H.*, 138 P.3d 299, 303 (Colo. 2006); *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52 (1989). Accordingly, in a proceeding in which ICWA may apply, tribes must have a meaningful opportunity to participate in determining whether the child is an Indian child and to be heard on the issue of ICWA's applicability. *B.H.*, 138 P.3d at 303.

¶ 5    To ensure tribes have an opportunity to be heard, Colorado's ICWA-implementing legislation provides that in dependency and neglect proceedings, the petitioning party must make continuing inquiries to determine whether the child is an Indian child. § 19-1-126(1)(a), C.R.S. 2017; *see also B.H.*, 138 P.3d at 302.

¶ 6    The federal regulations and guidelines implementing ICWA impose a duty of inquiry and notice on trial courts. 25 C.F.R.

23.107(a) (2017); Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act, 81 Fed. Reg. 96,476 (Dec. 30, 2016), https://perma.cc/3TCH-8HQM (2016 Guidelines); *see also* Notice of Guidelines, 81 Fed. Reg. 96,476 (Dec. 30, 2016). The trial court must ask each participant on the record at the beginning of every emergency, voluntary, or involuntary child custody proceeding whether the participant knows or has reason to know that the child is an Indian child. 25 C.F.R. § 23.107(a); *see also People in Interest of L.L.*, 2017 COA 38, ¶ 19. A proceeding to terminate parental rights is a separate child custody proceeding under ICWA. *See* 25 U.S.C. § 1903(1) (2012); *see also* § 19-1-126(1); *People in Interest of C.A.*, 2017 COA 135, ¶ 10. Accordingly, the court must inquire at the commencement of the termination proceeding, and all responses should be on the record. 25 C.F.R. § 23.107(a).

¶ 7 When there is reason to know or believe that a child involved in a child custody proceeding is an Indian child, the petitioning party must send notice of the proceeding to the potentially concerned tribe or tribes. *B.H.*, 138 P.3d at 302; *see also* 25 U.S.C. § 1912(a) (2012); § 19-1-126(1)(b). The BIA publishes a list of

3

designated tribal agents for service of ICWA notice in the Federal Register each year and makes the list available on its website.  2016 Guidelines, pp. 19-20; *see also* 82 Fed. Reg. 12,986-13,009 (Mar. 8, 2017).  If the identity or location of the tribe cannot be determined, notice must be given to the BIA.  *B.H.*, 138 P.3d at 302; *see* 25 U.S.C. § 1912(a).

¶ 8     The 2016 Guidelines recommend the following steps when the reporting party has not identified a specific tribe:

> If only the Tribal ancestral group (e.g., Cherokee) is indicated, then . . . State agencies or courts [should] contact each of the Tribes in that ancestral group (*see* . . . the published list of ICWA designated agents) to identify whether the parent or child is a member of any such Tribe.  If the State agency or court is unsure that it has contacted all the relevant Tribes, or needs other assistance in identifying the appropriate Tribes, it should contact the BIA Regional Office.  Ideally, State agencies or courts should contact the BIA Regional Office for the region in which the Tribe is located, but if the State agency or court is not aware of the appropriate BIA Regional Office, it may contact any BIA Regional Office for direction.

2016 Guidelines, p. 18.  Thus, "courts [and state agencies] are not required to become experts in tribal genealogy." *In re J.T.*, 693 A.2d 283, 289 (Vt. 1997) (father's statement that his father was a

"full-blooded Mohican" did not require court to resolve whether he might be affiliated with the federally recognized Mohegan tribe or the unrecognized Mahican tribe; court's duty was only to notify the BIA). Instead, the BIA is available to assist in identifying appropriate tribes. 2016 Guidelines, p. 18; *accord In re Trever I.*, 973 A.2d 752, 758-59 (Me. 2009) (child welfare agency properly investigated father's vague claim of Indian heritage by notifying BIA of supporting information).

## II. Procedural History

¶ 9 The Department filed a petition in dependency and neglect in April 2016. That same month, J.S.R. told the Department he had Cherokee heritage on his father's side. A month later, he told the trial court his father's lineage descended from a tribe in Arkansas, but he did not know which tribe. The Department did not notify any tribe or the BIA of the dependency and neglect proceeding.

¶ 10 The Department filed a motion to terminate mother's, J.S.R.'s and S.B.-R.'s parental rights in November 2016. In December 2016, the Department sent notice of the termination proceeding to the three federally recognized Cherokee Tribes. Each of the tribes responded that A.R. was not a member or eligible for membership.

¶ 11    The Department also notified the BIA.  The notice stated that J.S.R. had indicated he had Cherokee heritage, but it did not mention his reported affiliation to an unknown tribe in Arkansas. The BIA replied that the notice indicated the child's possible tribal affiliation was Cherokee, the Certificate of Mailing showed the Cherokee Tribes had been notified, and the BIA does not research or determine tribal enrollment for tribes.

¶ 12    The trial court terminated all three parents' parental rights in July 2017.  Although the court held eight hearings in the eight months following the initiation of the termination proceeding in November 2016, it made no further inquiry regarding the children's possible Indian status at any time.

### III.    Analysis

¶ 13    J.S.R. contends that the Department failed to comply with ICWA's notice requirements because it did not send notice to any tribes in Arkansas.  We agree in part.

¶ 14    There are no federally recognized tribes with designated tribal agents in Arkansas.  *See* Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs, 82 Fed. Reg. 4915-02 (Jan. 17, 2017).  Nevertheless, J.S.R.

6

contends that ICWA required the Department to research whether any federally recognized tribes are located at least partially in that state. In particular, he asserts that an investigation would have revealed that the Osage Nation, a federally recognized tribe with its designated tribal agent in Oklahoma, identifies its territory to include land in the state of Arkansas. *See* Historic Preservation | Osage Nation (Apr. 9, 2018), https://perma.cc/C7V7-RN2M. (We note that J.R.'s opening brief characterizes Arkansas as included in "Osage lands," while the website describes the area as part of its "ancestral lands.")

¶ 15    ICWA does not, however, require courts or departments of human services to ferret out tribal connections from such vague information as the name of a state with no designated tribal agents. *See In re Desiree F.*, 99 Cal. Rptr. 2d 688, 695 (Cal. Ct. App. 2000). Instead, that burden shifts to the BIA, which presumably has the resources and expertise necessary for the task. *See id.*; *see also* 2016 Guidelines, p. 18.

¶ 16    But the notice in this case did not alert the BIA that J.S.R. had reported a tribal connection to Arkansas. This omission frustrated the BIA's ability to fully discharge its responsibility under

7

ICWA to identify potentially relevant tribes.  Therefore, we must remand the case to the trial court to ensure compliance with ICWA.

## IV.  Remand Instructions

¶ 17    On remand, the trial court shall direct the Department to (1) procure the appearance of all the parents, if possible, so that the court may inquire of each of them on the record and (2) inquire of such persons with whom it has contact who may have knowledge of the children's possible Native American ancestry.

¶ 18    The court shall then hold a hearing and ask the participants to state on the record whether they know or have reason to know or reason to believe that any of the children is an Indian child.  25 C.F.R. § 23.107; *see also* 2016 Guidelines, p. 11; § 19-1-126(1)(b). At the hearing, the Department shall make a record of its efforts to determine whether the children are Indian children.  *See* § 19-1-126(1)(a).  The court shall then issue an order detailing its findings.

¶ 19    If any participant provides reason to know or believe that any of the children may be affiliated with a particular tribe, the trial court should proceed in accordance with the ICWA notice requirements and direct the Department to send notice to the

applicable tribe or tribes.  Otherwise, based on the information that J.S.R. has already provided regarding A.R., the court shall direct the Department to send notice to the BIA indicating J.S.R.'s reported tribal connection to Arkansas.

¶ 20     The trial court must afford the tribes or the BIA a reasonable amount of time to respond to notices and must proceed in accordance with 25 U.S.C. § 1912(a), which provides that (1) no foster care placement hearing or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the tribe; and (2) a tribe shall be granted twenty additional days to prepare for such proceeding if the tribe so requests.

¶ 21     After the expiration of the timeframe under 25 U.S.C. § 1912(a) or a reasonable additional time deemed appropriate by the trial court, the court shall enter factual findings and legal conclusions regarding the application of ICWA.

¶ 22     If the trial court determines that any of the children is an Indian child, within 7 days of issuance of the trial court's order making such determination, the Department shall file notice with this court along with a copy of the trial court's order.  The appeal shall then be recertified to permit a division of this court to issue an

9

opinion vacating the termination judgment as to the Indian child or children and remanding the case to the trial court with directions to proceed in accordance with ICWA as to that child or children. The appeal shall be recertified as to any non-Indian children.

¶ 23 If the trial court determines none of the children is an Indian child, within 7 days of issuance of the trial court's order making such determination, the Department must file notice with this court along with a copy of the trial court's order, and the appeal shall be recertified. A supplemental record consisting of the court record created on remand, including the trial court's order, is due 14 days after recertification. However, within 7 days of the matter being recertified, if any party wishes to supplement the record with transcripts of hearings that occurred on remand, that party must file a supplemental designation of transcripts with the trial court and this court. If supplemental transcripts are designated, the complete supplemental record, including the court record, will be due 21 days after the filing of the supplemental designation of transcripts.

¶ 24 Within 14 days of the filing of the supplemental record, any parent may file a supplemental brief, not to exceed 3500 words,

limited to addressing the trial court's ICWA determination. If M.B.-R.'s father, although not currently a party to this appeal, wishes to file a brief addressing the ICWA determination, he may do so, but his brief must be accompanied by a notice of appeal indicating his intent to appeal the ICWA determination. Within 14 days of any supplemental brief by a parent, any other party may file supplemental response brief not to exceed 3500 words.

¶ 25 This court further orders that the Department notify this court in writing of the status of the trial court proceedings in the event that this matter is not concluded within 28 days from the date of this order, and that the Department shall do so every 28 days thereafter until the trial court issues its order on remand.

BY THE COURT:
Loeb, C.J.
Ashby, J.
Welling, J.

11